IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| Robert Rivers, Eric Cook and Jeffrey Tisdale<br><br>Plaintiff,<br><br>v.<br><br>Charleston County School District and Anita Huggins, Superintendent<br><br>Defendants. | ) | CASE NO.: 2:26-cv-4257-BHH-MHC<br><br>**COMPLAINT** |

COMES NOW PLAINTIFFs Robert Rivers ("Rivers"), Eric Cook, ("Cook") and Jeffrey Tisdale ("Tisdale"), collectively ("Plaintiffs"), by and through undersigned counsel, complaining of Charleston County School District and Anita Huggins, Superintendent for Charleston County School District ("CCSD" or "Defendant"), and allege and show unto this Honorable Court as follows:

**PARTIES**

1. Plaintiff Robert Rivers is an African American man and a resident of Berkeley County, South Carolina. At all relevant times, Rivers worked for Charleston County School District ("CCSD") in Charleston County, South Carolina. Plaintiff Robert Rivers was employed by CCSD initially as a master carpentry foreman in the Facilities Maintenance Department of Facilities Management in 2009. His current job title at CCSD is Director of Facility Maintenance.

2. Plaintiff Eric Cook is an African American man and a resident of Charleston County, South Carolina. Cook worked for CCSD in its Facilities Management Department from November 3, 2000, until his retirement in November 2025.
3. Plaintiff Jeffrey Tisdale is an African American man and a resident of Charleston County, South Carolina. Tisdale began employment with CCSD in 2006 General Services Manager in the Facilities Maintenance Department of Facilities Management and remains employed by CCSD as a Facilities Maintenance Officer.
4. Defendant Charleston County School District is a public school district operating in Charleston County, South Carolina. At all relevant times, CCSD employed more than fifteen employees and was an employer within the meaning of Title VII.
5. Defendant Anita Huggins is the Superintendent of CCSD and oversees its departments, including the Facilities Management Department. She is sued in her official capacity for prospective declaratory and equitable relief.

## JURISDICTION AND VENUE

6. Plaintiffs hereby repeat and reassert each and every allegation contained in the preceding paragraphs as if fully set forth herein.
7. This Court has subject-matter jurisdiction over Plaintiffs' federal claims under 28 U.S.C. § 1331 because those claims arise under federal law.
8. This Court has jurisdiction over Plaintiffs' claims under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e et seq., and 42 U.S.C. § 1981, enforced against the public-school-district Defendant through 42 U.S.C. § 1983.

9. This Court has jurisdiction to award equitable and other relief for violations of federal civil-rights laws. 28 USCS § 1343.
10. This Court has personal jurisdiction over Defendants because CCSD operates in Charleston County, South Carolina, and Defendant Huggins performs her official duties in this District.
11. Venue is proper in this District because Defendants reside in this District for purposes of this action and a substantial part of the events and omissions giving rise to Plaintiffs' claims occurred in Charleston County, South Carolina. 28 USCS § 1391.
12. Jurisdiction of this Court arises under 28 U.S.C.§1331; 42 U.S.C. 1983; Title VII, including 42 U.S.C. §2000 (e) and 42 U.S.C. §1981, *et seq*.
13. This Honorable Court has jurisdiction over the subject matter hereof and parties hereto, and venue is proper in this forum.

**III. EXHAUSTION OF ADMINISTRATIVE REMEDIES**

14. Prior to filing with the EEOC and SCHAC, and while their charges were pending Plaintiffs reported to Human Resources of CCSD and their chain of command the facts and circumstances of hostile environment, racial discrimination, disparate treatment, systemic exclusion from advancement based on their race and discriminatory changes to position requirements to favor Caucasian employees and retaliation.
15. After Defendants failed to address systemic racism despite reports, Plaintiffs filed timely allegations of discrimination and retaliation with the Equal Employment Opportunity Commission (EEOC) and South Carolina Human Affairs Commission (SCHAC) as dual agents.
16. Plaintiffs were further retaliated against for reporting the discrimination to the State and Federal Agencies which was reported to the employer.

17. Plaintiffs filed charges of race discrimination and retaliation with the Equal Employment Opportunity Commission ("EEOC") and the South Carolina Human Affairs Commission ("SCHAC").

18. Rivers filed EEOC Charge No. 415 01111 on or about June 22, 2022; Cook filed EEOC Charge No. 415 01127 on or about June 23, 2022; and Tisdale filed EEOC Charge No. 415 01126 on or about June 22, 2022.

19. Plaintiffs received EEOC Determinations and Notices of Right to Sue dated June 26, 2026, and timely bring this action within the applicable ninety-day period.

20. Plaintiffs' Title VII claims are reasonably related to, and grow out of, the charges alleging race discrimination, hostile environment unequal promotional opportunities, discriminatory job-requirement changes, disparate treatment, harassment, and retaliation

21. The claims presented by the Plaintiffs are timely as they are filing suit within 90 days of the EEOC notice of the right to commence action and submit that they have satisfied all private administrative and judicial pre-requisites to the institution of this action.

## FACTUAL ALLEGATIONS

22. Plaintiffs hereby repeat and reallege each and every allegation contained in the preceding paragraphs as if fully set forth herein.

23. CCSD employed Plaintiffs in its Facilities Management Department, where Plaintiffs possessed substantial experience and qualifications for supervisory, officer, and director-level work.

24. At the time of hire officer-level positions required a college degree and specified experience and qualifications.

25. Plaintiff Eric Cook was hired on November 3, 2000 as a Maintenance Officer in the Facilities Management Department of CCSD and retired on or about November 3, 2025.

26. Plaintiff Jeffrey Tisdale was hired as a General Services Manager for the Facilities Management Department of CCSD on September 11, 2006. He is currently a Facilities Maintenance Officer in the Facilities Management Department.

27. Tisdale earned a Bachelor of Science in Management and later a Masters of Science in Management and possessed at all times relevant facilities management and public works experience.

28. Plaintiff Robert Rivers was hired as Carpenter Mechanic for the Facilities Management Department of CCSD in April 2009. He is currently the Director of Facilities Maintenance in Facilities Management.

29. Historic and continued discrimination against African American workers is identified by the Plaintiffs as going back as far as 2011, at which time all three Plaintiffs worked for Facilities Management of CCSD.

30. In or about 2011, CCSD reorganized portions of its Facilities Management operations and altered job descriptions and educational requirements for director and officer-level positions.

31. On information and belief CCSD reduced or removed college-degree requirements to permit White employees including those without college degrees to obtain management, officer, and director-level positions, while African American employees had previously been required to meet stricter educational standards in order to qualify for those positions.

32. On or about May 1, 2011, CCSD promoted Dennis Burgess, Deborah Gunn, and Michael Stone, all White employees, to unadvertised management or officer-level positions in violation of the normal and standard practice of advertising open positions to allow for fair hiring and promotion. Burgess, for example was promoted to a position with a new job description that only required a GED or high school diploma. Plaintiffs were prevented from applying for those positions despite their qualifications, experience, and interest in advancement.

33. On information and belief, neither Burgess, Gunn nor Stone possessed the advanced education previously required by African Americans to be promoted to such positions.

34. Following Burgess' promotion Plaintiff Tisdale was reassigned to report to Burgess, who was recently promoted and who, on information and belief, possessed less education and experience than Tisdale. Plaintiff Tisdale, a General Services Manager, possessed a bachelor's degree, was reassigned to report to Burgess, the new Plant Operations Officer, who on information and belief possessed a high school diploma and has less experience.

35. Plaintiff Tisdale's General Services unit was also moved from the Contracts and Procurement Division to Facilities Management, and his reporting line was changed without a corresponding salary increase.

36. As a result of the reorganization and new educational requirements, African American employees including Plaintiffs who were previously required to have a college degree to obtain management positions, were now reporting to White superiors with lesser education and experience.

37. Also as a result of the 2011 reorganization, African Americans including Plaintiffs, who had been promoted to managers or who were in line to be promoted to management positions and responsibilities, were reorganized to report to White supervisors, causing lost opportunities, and negatively impacting their employment with the Defendants.

38. CCSD at the time and at the present has policies and procedures in place which prohibit discrimination and retaliation based on race.

39. CCSD despite reports including by Plaintiffs, continued to permit actions which resulted in systemic exclusions from advancement opportunities for qualified African American employees, including Plaintiffs, including by employing and promoting less-qualified White employees to officer- and director-level positions within the Facilities Management Department.

40. As a result of these policies, Plaintiffs were precluded from career advancement and higher paying positions.

41. In or about August 2013, Ronald Kramps was hired as the Executive Director of Facilities Management/Maintenance Department for CCSD.

42. Plaintiffs allege that, during Kramps' tenure, CCSD continued to change job descriptions and minimum qualifications to accommodate White candidates selected or favored for advancement, while excluding qualified African American employees from meaningful consideration for comparable advancement opportunities, including Plaintiffs.

43. The foregoing enabled the promotion of White employees over the Black managers, including Plaintiffs, that they were formerly assigned to and which Black managers were excluded from advancement opportunity.

44. Kramps also showed favoritism of White workers in hiring and raises to the detriment of Black workers.

45. In or about July 2015, during Kramps tenure and relative to Plaintiff Cook, CCSD again, on information and belief changed educational requirements to allow the three White employees who had been subordinate to Cook to be promoted to officer-level positions at the same pay level as Cook without being required to possess the college degree that CCSD had required when Cook was hired, eventually leading those employees to have great opportunities than Cook.

46. Under Kramps, from 2013 to 2022, the promotion of Whites to management positions to the detriment of Plaintiffs and other African Americans allowed a "plantation mentality" to be promoted and allowed. Black workers were stuck in lower level positions and experienced greater scrutiny and harsher discipline.

47. Reflective of the forgoing mentality, in or about 2014, Kramps instructed Maintenance Officer Mike Stone, Rivers' White supervisor, that Rivers should not perform officer duties for Stone and should be "put back in his place."

48. Before Stone's retirement, Rivers performed substantial Maintenance Officer duties, including managing office personnel, approving timecards, attending meetings, conducting principal visits, and filling in for Stone during his absences.

49. In or about February 2021, Plaintiff Rivers' supervisor Mike Stone retired. Rivers interviewed for Stone's interim position, as he was essentially performing Stone's duties at the time. Rivers was denied the promotion despite Rivers' meeting qualifications, education and experience, as well as performing the position's duties. CCSD instead

selected Robert Waltz, a White employee, for the interim role although Rivers was equally or more qualified.

50. Waltz, noted above, had previously benefited from CCSD's preferential hiring practices. In 2021 he was selected, on information and belief, for an Environmental Services Officer position. Defendant in order to tailor the position for the chosen White applicant withdrew and rewrote the job posting for the Environmental Service Officer posting which initially required a college degree, lowering the minimum qualification to a high-school diploma or GED. CCSD then reposted the position, and selected Waltz, a White employee for the position. This practice of changing position descriptions did not benefit Black employees.

51. In or about 2021, Kramps created three Maintenance Director positions. Two of the positions required only a high-school diploma or GED, while another on information and belief may have required a college degree.

52. Before the director's positions were filled, Kramps identified three White individuals that he wanted to apply. Plaintiffs allege that the three identified employees were White and that on information and belief had less education and experience than similarly situated Black candidates including Plaintiff Tisdale.

53. Plaintiff Tisdale applied for one of the Director positions and was interviewed for Maintenance on or about August 31, 2021. Although qualified and experienced, Tisdale was told that he needed more custodial and grounds experience and was denied the position.

54. Plaintiffs allege that Tisdale was more qualified than White employees selected or favored for officer- and director-level positions and that CCSD's stated reason for denying him promotion was pretextual. Upon information and belief, of the three candidates interviewed, one did not meet the educational requirement, one candidate quit, and the highly qualified Black applicant Tisdale was still denied promotion.

55. On information and belief, there were no qualified Black workers promoted to management positions in Facilities Management during the tenure of Ronald Kramps, including Plaintiffs.

56. Black employees were also subjected to stricter attendance enforcement, more frequent disciplinary actions, and barriers to advancement that were not applied to White employees.

57. Defendants were aware of the discrimination going back to the early 2010's but allowed it to percolate and fester.

58. Plaintiffs and other African American employees reported to CCSD Human Resources, Employee Relations, and their chain of command about discriminatory promotional practices, disparate treatment, racial favoritism, and the alteration of job qualifications to favor White employees.

59. In August/September 2021, and Plaintiffs and other employees of CCSD were in contact with National Action Network who contacted the CCSD Board and Superintendent Gerrita Postlewaite. In September 27, 2021 the Network wrote to the Defendant seeking to remedy and call attention to issues including;

    a. Job Descriptions were created to favor White employees

b. Well qualified African American employees were not given the opportunity to fill positions titled "Interim".
c. White employees promoted to unadvertised officer positions paying over $100,000 per year and qualified African American employees were not given the opportunity to apply.
d. Reporting lines were changed to benefit White employees. An entire procurement department was moved to Facilities Management for the benefit of a White supervisor less qualified than a Black manager.
e. White employees were allowed to write their own job descriptions and educational requirements.

60. Plaintiffs and other African American employees subsequently participated in an investigation concerning alleged discrimination within Facilities Management. CCSD hired outside counsel to perform the official investigation into the discrimination.

61. Plaintiffs participated in the investigation by completing a form from CCSD HR and Employee Relations, asking them to describe their "job problem". On information and belief approximately 15 Black employees put their experiences on record.

62. Following Plaintiffs' participation in the investigation, Plaintiffs and other African American employees experienced increased scrutiny, surveillance, threats of discipline, and intimidation.

63. The alleged retaliatory conduct included following African American employees, locking doors to restrict employees' movement, and threatening harsh discipline for minor workplace matters. Retaliation included following Plaintiffs and other Black employees, such as those under Plaintiff Cook's, Tisdale's and Rivers' supervision, photographing their vehicles, shining flashlights into their cars, threatening harsh discipline for minor infractions such as smoking, and other efforts to intimidate Black workers and create a hostile environment.

64. Plaintiff Rivers also reported concerns of retaliation to Interim Supervisor Robbie Waltz.
65. Specifically, Plaintiff Rivers sent an email to Interim Supervisor Waltz November 3, 2021 identifying what appears to be targeting of Black employees, such as locking doors to prevent them from exiting the auto shop, a flashlight shone into Troy Eason's van at 6:40am.
66. Also in the 2021-2022 timeframe, CCSD vis-à-vis Waltz told Plaintiff Rivers he needed to immediately vacate his office for a White female manager. Rivers was contacted in the middle of the workday and told to move his office immediately. This was unusual because typically, a move would be planned or completed toward the end of the workday to minimize disruption. Plaintiff was not given a reasonable explanation for why the move had to happen immediately in the middle of the workday.
67. The way the move was handled was particularly upsetting and embarrassing because Plaintiff had to have his office moved while employees and coworkers were present. Plaintiff felt that the manner in which the move was carried out was intended to embarrass or humiliate Plaintiff in front of his employees and coworkers.
68. CCSD then placed Rivers in a smaller office. Plaintiff, an African American manager, was required to give up a larger office so that a White female manager could have it, while Plaintiff was moved into a smaller space. After this incident, another African American manager was moved into the same office area as Plaintiff Rivers by Waltz – who had a dispute with the other manager.
69. Plaintiff believes these actions were part of the different and less favorable treatment Plaintiff and other African Americans received because of race.

70. National Action Network held a follow up press conference on April 5, 2022, and Board Chair Reverend Eric Mack then met with Plaintiffs and others, along with CCSD General Counsel about the issues. In that meeting, Defendants, via Mack, acknowledged systemic discrimination in promotions and working conditions in the Facilities Management Department, and apologized for the events that transpired. Mack characterized the severity of allegations as a 9 on a scale of 1-10.

71. On April 1, 2022, there was a mandatory "All Hands" meeting called by CCSD Interim Superintendent of School Don Kennedy. He began the meeting by saying that the findings of the investigation stated admitting that CCSD's hiring and promotion practices were discriminatory and that changes would be made.

72. Despite Plaintiffs' reports, the external advocacy efforts, the internal and outside investigations, and CCSD's acknowledgment of discrimination in its hiring and promotion practices, Plaintiffs allege that CCSD failed to provide effective corrective action for the discrimination, unequal advancement opportunities, hostile conditions, and economic harms alleged herein.

73. Cook alleges that he had performed work associated with the Director of Maintenance position for approximately twenty years.

74. In May 2022, Eric Cook met with Operations Director Jeffrey Bowery and Ronald Kramps regarding an Interim Director position. They directly asked Cook if he believed White employees Robert Waltz (promoted in 2021), Deborah Gunn and Dennis Burgess (promoted in 2011) were deserving of their promotions. Cook pointed to the history of alteration of job requirements and lack of competition as stated above and noted that no African Americans had been promoted under Kramps to positions paying over $100,000

per year to the best of his information, despite qualifications and experience. They also discussed concerns regarding Cook supervising Waltz in the Interim position, which Cook knew had been promised to Waltz.

75. In these 2022 meetings, CCSD offered Cook the interim Director of Maintenance position but advised that they required him to compete for permanent appointment, whereas similarly situated White employees placed in interim director positions were routinely made permanent without competition.

76. Despite Defendants admitting systemic discrimination and hostile environment, inequality and violations of law and policy, no effective remedial action was taken and discrimination against African American employees is alleged to continue at this time.

**FOR A FIRST CAUSE OF ACTION**
**(Racial Discrimination-and Disparate Treatment in violation of Title VII of the Civil Rights Act of 1964)**

77. Plaintiffs hereby repeats and realleges each and every allegation contained in the preceding paragraphs as if specifically set forth herein.

78. Title VII prohibits an employer from discriminating against an individual with respect to compensation, terms, conditions, or privileges of employment because of race, and from limiting, segregating, or classifying employees in a manner that deprives or tends to deprive them of employment opportunities because of race. 42 USCS § 2000e-2.

79. Plaintiffs are African American and therefore are members of a protected racial class.

80. Plaintiffs performed their positions satisfactorily, possessed substantial experience and qualifications, and were qualified to compete for the supervisory, officer, and director-level opportunities at issue.

81. CCSD subjected Plaintiffs to adverse employment actions and materially adverse terms and conditions of employment by, among other things, denying them equal promotional opportunities, changing job requirements to favor White employees, assigning Plaintiffs to subordinate reporting relationships, applying stricter scrutiny and discipline, and denying compensation and benefits associated with advancement.

82. CCSD treated similarly situated White employees more favorably by promoting or favoring them for officer- and director-level positions despite allegedly lesser education or qualifications, altering educational requirements to facilitate their advancement, and allowing noncompetitive appointments or preferential interim assignments.

83. Plaintiffs' race was a motivating factor in CCSD's disparate treatment of Plaintiffs.

84. CCSD's stated explanations for the challenged employment actions, including asserted qualification requirements and experience criteria, were pretextual because CCSD applied requirements differently when White employees were favored for advancement. Plaintiffs, as African Americans, are a member of a protected group by virtue of their race.

85. As a result of their race, Plaintiffs supervisors singled them out for disparate treatment, subjecting them to unequal discipline, and harsher treatment than Whites, despite their exemplary performance, experience and levels of education.

86. In addition to the above CCSD willfully, wantonly, and recklessly discriminated against the Plaintiffs by knowingly and intentionally harassing and discriminating against Plaintiffs due to their race and giving preferential and favorable treatment to similarly situated non-African American coworkers.

87. In failing to protect the Plaintiffs from racial discrimination or preferential treatment, failing to abide by its own policies and procedures, and failing to follow the law, the Defendant acted with malice or reckless indifference to Plaintiffs' federally protected rights set forth in Title VII of the Civil Rights Act of 1964, as amended (42 U.S.C. §2000(e) *et seq.*) and the Equal Employment Opportunity Act.

88. Defendant violated Title VII of Civil Rights Act of 1964, as amended (42 U.S.C. § 2000(e) *et seq.*), and the Equal Employment Opportunity Act by allowing racial discrimination and preferential treatment to exist in the workplace.

89. As a direct and proximate result of Defendants' racial discrimination, Plaintiffs have suffered irreparable injuries, including but not limited to loss of pay, benefits and other economic losses, emotional pain and suffering, mental anguish, humiliation, embarrassment, personal indignity, and other intangible injuries in an amount to be determined by the trier of fact.

**FOR A SECOND CAUSE OF ACTION**
**(Failure To Promote Based on Race in Violation of Title VII)**

90. Plaintiffs incorporate by reference the foregoing paragraphs as though fully set forth herein.

91. Plaintiffs were members of a protected racial class, were qualified for available manager, officer- and director-level positions or interim assignments, sought or would have applied for promotional opportunities but for CCSD's unadvertised, noncompetitive, and allegedly preselected processes, and were denied promotion or a meaningful opportunity to compete.

92. CCSD selected, promoted, assigned, or favored White employees for the positions and advancement opportunities at issue under circumstances giving rise to an inference of race discrimination.

93. CCSD denied Plaintiffs promotion and equal access to promotional processes because of Plaintiffs' race, in violation of Title VII. 42 USCS § 2000e-2.

94. As a direct and proximate result, Plaintiffs have suffered irreparable injuries, including but not limited to lost compensation, benefits, professional advancement, seniority-related advantages, retirement contributions, and other economic opportunities, emotional pain and suffering, mental anguish, humiliation, embarrassment, personal indignity, and other intangible injuries in an amount to be determined by the trier of fact.

**FOR A THIRD CAUSE OF ACTION**
**(Discriminatory Compensation, Pay Inequity, Deprivation of Economic Opportunity in Violation of Title VII)**

95. Plaintiffs incorporate by reference the foregoing paragraphs as though fully set forth herein.

96. CCSD's discriminatory promotion, job-classification, job-requirement, and reporting-line practices denied Plaintiffs compensation and benefits associated with management, officer- and director-level work and advancement.

97. Plaintiffs allege that White employees received higher-paid officer, director, and interim management assignments despite allegedly possessing lesser education or qualifications than Plaintiffs.

98. Plaintiffs allege that CCSD's race-based employment practices affected their wages, benefits, pension contributions, promotional compensation, and other economic

opportunities each time compensation and benefits were paid under the discriminatory system.

99. For purposes of Title VII, an unlawful employment practice concerning discriminatory compensation occurs when a discriminatory compensation decision or practice is adopted, when an employee becomes subject to it, and when the employee is affected by its application, including each time wages, benefits, or other compensation are paid. 42 USCS § 2000e-5.

100. CCSD's actions discriminated against Plaintiffs with respect to compensation, terms, conditions, and privileges of employment because of race. 42 USCS § 2000e-2.

101. As a direct and proximate result, Plaintiffs have suffered irreparable injuries, including but not limited to lost compensation, benefits, professional advancement, seniority-related advantages, retirement contributions, and other economic opportunities, emotional pain and suffering, mental anguish, humiliation, embarrassment, personal indignity, and other intangible injuries in an amount to be determined by the trier of fact.

## FOR A FOURTH CAUSE OF ACTION

**(Racial Harassment and Hostile Work Environment in Violation of Title VII)**

102. Plaintiffs incorporate by reference the foregoing paragraphs as though fully set forth herein.

103. Plaintiffs were subjected to unwelcome conduct because of race, including racialized workplace hierarchy, disparate discipline, increased scrutiny, surveillance, intimidation, threats of discipline, and the restriction or monitoring of African American employees after they reported discrimination.

100. The alleged harassment and the existence of a racial hierarchy of White employees over Blacks as set forth above was sufficiently severe or pervasive to alter the conditions of Plaintiffs' employment and create an abusive working environment for Plaintiffs and other African American employees.

101. CCSD knew or should have known of the harassment because Plaintiffs and other employees reported discrimination and hostile conditions to Human Resources, Employee Relations, management, the CCSD Board, and through the investigation process.

102. CCSD failed to take prompt and effective remedial action reasonably calculated to end the alleged racial harassment and hostile work environment.

103. CCSD thereby discriminated against Plaintiffs in the terms, conditions, and privileges of employment because of race. 42 USCS § 2000e-2.

104. As a direct and proximate result, Plaintiffs have suffered irreparable injuries, including but not limited to lost compensation, benefits, professional advancement, seniority-related advantages, retirement contributions, and other economic opportunities, emotional pain and suffering, mental anguish, humiliation, embarrassment, personal indignity, and other intangible injuries in an amount to be determined by the trier of fact.

**<u>FOR A FIFTHTH CAUSE OF ACTION</u>**
**(Disparate Impact Based on Race in Violation of Title VII)**

105. Plaintiffs incorporate by reference the foregoing paragraphs as though fully set forth herein.

106. CCSD employed facially neutral employment practices that disproportionately harmed African American employees, including reducing or modifying educational requirements

for positions when White candidates were to be favored, using unadvertised or noncompetitive selection processes, changing reporting structures, and applying discretionary qualification criteria inconsistently.

107. These practices disproportionately excluded qualified African American employees, including Plaintiffs, from officer- and director-level promotional opportunities, compensation, benefits, and advancement.

108. The challenged practices were not job related for the positions in question and consistent with business necessity, or, alternatively, less discriminatory practices were available to achieve CCSD's legitimate employment objectives.

109. CCSD's practices limited, segregated, or classified Plaintiffs and other African American employees in ways that deprived or tended to deprive them of employment opportunities and adversely affected their employment status because of race. 42 USCS § 2000e-2.

110. As a direct and proximate result, Plaintiffs have suffered irreparable injuries, including but not limited to lost compensation, benefits, professional advancement, seniority-related advantages, retirement contributions, and other economic opportunities, emotional pain and suffering, mental anguish, humiliation, embarrassment, personal indignity, and other intangible injuries in an amount to be determined by the trier of fact.

**FOR A SIXTH CAUSE OF ACTION**
**(Race Discrimination in Violation of 42 U.S.C. §1981**
**Enforced Through 42 U.S.C. § 1983)**

111. Plaintiffs incorporate by reference the foregoing paragraphs as though fully set forth herein.

112. 42 U.S.C § 1981 guarantees to all persons the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by White citizens, and the right to make and enforce contracts.

113. Plaintiffs, as African American employees, had contractual employment relationships with CCSD and were entitled to make, perform, modify, and enjoy the benefits, privileges, terms, and conditions of their employment contracts on the same basis as White employees.

114. Defendants offered and Plaintiffs accepted employment and policies and procedures that ensure equal employment opportunities to Plaintiffs.

115. Defendants offered to and Plaintiffs accepted that they would abide by its Equal Opportunity Employers policies and procedures, including but not limited to:

a. Promoting a non-discriminatory work environment by providing equal employment opportunities to all employees and applicants without regard to race, color, religion, sex, gender, genetic information, national origin, age, veteran status, disability, or any other status protected by federal or state law;

b. Render decisions regarding recruitment, selection, hiring, promotion, compensation, and benefits will be administered without regard to race, color, sex, creed, religion, age, national origin, physical disability, or political affiliation; and

c. Compute salary levels in compliance with all applicable state and federal statutes and regulations and will be made without regard to an employee's or applicant's age, race, creed, religion, sex, national origin, political affiliation, or physical disability.

116. Based on the Defendant's offer of full-time employment and Equal Opportunity Employers policies and procedures, Plaintiffs accepted CCSD'S employment offer.

117. CCSD intentionally discriminated against Plaintiffs because of race by denying them equal opportunities for promotion, compensation, professional advancement, benefits, and workplace conditions; by favoring White employees in employment decisions; and by subjecting Plaintiffs to disparate treatment and harassment.

118. The discriminatory conduct was undertaken pursuant to CCSD customs, practices, policies, and decisions implemented or ratified by persons with final or delegated authority over Facilities Management employment decisions, including the alleged manipulation of job descriptions, educational requirements, selection processes, reporting relationships, promotions, and compensation opportunities.

119. Defendant Huggins, in her official capacity, is responsible for ensuring that CCSD personnel actions are administered free from race discrimination and for providing prospective equitable relief necessary to prevent continuing discrimination.

120. Defendants' intentional race discrimination impaired Plaintiffs' contractual employment rights and denied Plaintiffs the same rights and benefits enjoyed by White employees

121. As a direct and proximate result of the Defendant's racial discrimination Defendants denied Plaintiffs the full and equal benefits and opportunities enjoyed by their White coworkers in violation of 42 U.S.C. § 1981.

122. As a direct and proximate result, Plaintiffs have suffered irreparable injuries, including but not limited to lost compensation, benefits, professional advancement, seniority-

related advantages, retirement contributions, and other economic opportunities, emotional pain and suffering, mental anguish, humiliation, embarrassment, personal indignity, and other intangible injuries in an amount to be determined by the trier of fact.

123. Plaintiffs are entitled to an award of compensatory damages for past and future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, reasonable attorneys' fees and costs, and punitive damages.

**FOR A SEVENTH CAUSE OF ACTION**
**(Employer Retaliation- Title VII of the Civil Rights Act of 1964 and 42 USC 1981)**

124. Plaintiffs hereby reallege each and every allegation contained in the preceding paragraphs as if fully set forth herein.

125. Plaintiffs reported racial discrimination and disparate treatment at the hands of their White managers to the CCSD Human Resource Office, to the EEOC and third parties and participated in a CCSD investigation in compliance with Defendant's policies and procedures.

126. Plaintiffs' reports were made in good faith and constituted a protected activity under Title VII of Civil Rights Act of 1964 (42 U.S.C. §2000(e) et seq.) and 42 USC 1981.

127. After making said reports, CCSD retaliated against Plaintiffs using greater scrutiny, harsher discipline, threats of discipline in addition to the retaliatory acts set forth above.

128. CCSD's stated reasons for retaliation were mere pretext for the actual retaliation received based on Plaintiffs' engaging in a protected activity.

129. Plaintiffs' reports of racial discrimination were a determining factor in the retaliation of Plaintiffs. But for Plaintiffs' reports of racial discrimination, they would not have been retaliated against.

130. Defendant willfully, wantonly, and recklessly discriminated against the Plaintiffs for engaging in a protected activity.

131. In failing to protect Plaintiffs from retaliation, CCSD acted with malice or reckless indifference to the federally protected rights.

132. As a direct and proximate result of Defendant's acts and omissions, Plaintiffs have suffered damages in the form of back and future wages, income and benefits, and have suffered severe psychological harm, emotional distress, anxiety, depression, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, embarrassment, humiliation, loss to professional standing, character and reputation, physical and personal injuries, and further seeks attorney's fees and costs and prejudgment interest.

133. Defendant's actions as set forth above were undertaken intentionally, willfully, wantonly, recklessly, maliciously, and with utter disregard for the federally protected rights of the Plaintiffs, entitling Plaintiffs to punitive damages.

**WEREFORE,** having fully complained of Defendants, Plaintiffs respectfully pray for judgment in their favor, and against Defendants, on all causes of action; including for an award of back pay, lost benefits, front pay where reinstatement is not feasible, and other economic relief; compensatory damages for emotional pain, suffering, inconvenience, mental anguish, humiliation, and loss of enjoyment of life; actual, consequential, resulting, nominal, compensatory, and punitive damages in an amount to be determined by the trier of fact; for an award of pre and post-judgment interest, attorneys' fees and costs, and such other and further relief as the Court deems just and proper.

**JURY DEMAND**

Plaintiffs demand trial by jury on all issues so triable.

Respectfully submitted,

*s/Jennifer Munter Stark*
Jennifer Munter Stark, Esq. FID 9364
Jennifer Munter Stark, Esquire, LLC
210 Wingo Way #300
Mt. Pleasant, SC 29464
(843) 972-0004, (843) 972-0006 (f)
jmunterstarklaw@gmail.com

September 24, 2026
Mt. Pleasant SC